IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| KENNETH RAY ROGERS p/k/a KENNY ROGERS<br>       Plaintiff,<br>v.<br>CAPITOL RECORDS, LLC, f/k/a CAPITOL RECORDS, INC., A DIVISION OF EMI MUSIC NORTH AMERICA, LLC<br>       Defendant. | Case No.<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: |
|---|---|

## COMPLAINT

Plaintiff Kenneth Ray Rogers p/k/a Kenny Rogers, by and through his attorneys, for his Complaint against the Defendant named above alleges as follows:

### JURISDICTION

The jurisdiction of this Court is based upon 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. The action for declaratory judgment is brought pursuant to 28 U.S.C. § 2201, which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331. Venue is proper in the District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

### PARTIES

1. Plaintiff Kenny Rogers is a citizen of Atlanta, Georgia.

2. Defendant Capitol Records, LLC, formerly known as Capitol Records, Inc., a division of EMI Music North America, LLC, is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

## PERSONAL JURISDICTION AND VENUE

3. Personal jurisdiction over Defendant is proper in this Court on the grounds that: (a) Defendant transacts substantial business in the State of Tennessee; (b) Defendant maintains an office in this Judicial District; (c) the parties hereto entered into an Agreement, subsequent to the Agreements at issue in this matter, which requires all Federal Court claims to be brought in the Federal District Courts located in Davidson County, Tennessee.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (c).

## NATURE OF THE ACTION

5. This action for breach of contract, breach of the duty of good faith, and fair dealing, unfair competition, an accounting, and a declaratory judgment against Capitol Records arises from Capitol Records' willful and knowing failure to properly account to and pay Kenny Rogers royalties, pursuant to written agreements, with respect to certain master recordings (the "Masters") of the musical performances by Kenny Rogers.

6. This action seeks remedies for Capitol Records' knowing violations of the terms of its agreements with Kenny Rogers and Kenny Rogers Productions whereby Capitol Records has paid Kenny Rogers significantly less royalties than are owed to Kenny Rogers under the terms of the agreements. Capitol Records has consistently failed to correctly account to and pay Kenny Rogers under the royalty provisions of the parties' agreements. Capitol Records' has also failed to correctly account to and pay Kenny Rogers for the Masters licensed to third-party Music Download and Mastertone Providers, as defined herein, for the distribution and sale of the Masters as "non-disc records." As explained below, the failure to pay Kenny Rogers appropriately for permanent downloads and mastertones, is, upon information and belief, part of a conscious decision by Capital Records, and others in the music business to deprive artists of

their proper royalties for the licensing of master recordings for sale by third party download and mastertone companies, and constitutes unfair competition under California state law. The wrongdoing of these labels was put to an end in the case of *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958 (9th Cir. 2010).

7. Kenny Rogers seeks compensatory damages for breach of contract. Kenny Rogers further seeks injunctive relief and restitution, dating back to Capitol Records' initial wrongdoing, for violations of the California law of unfair competition. Additionally, Kenny Rogers seeks an accounting of monies owed to him under the written agreements. Kenny Rogers further seeks a declaration, pursuant to 28 U.S.C. § 2201, that Capitol Records is obligated to pay Kenny Rogers an amount equal to fifty percent (50%) of Capitol Records' net royalties from Capitol Records' distribution and sale of non-disc records and Capitol Records' licensing of the Masters to others, including but not limited to Music Download and Mastertone Providers, for their manufacture, distribution, or sale of non-disc records.

## GENERAL ALLEGATIONS

8. On or about October 1, 1975, Kenny Rogers entered into an agreement (the "1975 Agreement") with Capitol Records' predecessor, United Artists Music and Records Group, Inc., (Capitol Records and United Artists Music and Records Group, Inc. are collectively referred to hereafter as "Capitol Records").

9. Pursuant to the terms of the 1975 Agreement, Kenny Rogers was engaged "as a performer on phonograph records." Kenny Rogers caused certain recorded performances of himself, (the "1975 Masters"), to be made and delivered to Capitol Records, and Capitol Records agreed to manufacture, distribute, sell, and license for sale and distribution those 1975 Masters in various configurations.

3

10. In consideration for performance under the 1975 Agreement, Capitol Records agreed to pay Kenny Rogers under a certain royalty structure and to account to Kenny Rogers under that royalty structure. In order to ensure Capitol Records correctly accounted to and paid Kenny Rogers, the 1975 Agreement gave Kenny Rogers the explicit right to inspect Capitol Records books and records through an audit procedure.

11. On or about March 31, 1977, Kenny Rogers Productions entered into an agreement (the "1977 Agreement") with Capitol Records (referred to collectively with the 1975 Agreement as the "Recording Agreements"). The Recording Agreements are governed by the law of the state of California as they were entered into in California and reference the obligation of the parties to adhere to California law.

12. Kenny Rogers has been at all relevant times the sole shareholder and chief executive of Kenny Rogers Productions.

13. Pursuant to the terms of the 1977 Agreement, Kenny Rogers Productions caused certain recorded performances of Kenny Rogers, (the "1977 Masters"), to be made and delivered to Capitol Records, and Capitol Records agreed to manufacture, distribute, sell, and license for sale and distribution those 1977 Masters in various configurations. Many of Kenny Rogers' greatest hits fall under the 1977 Agreement, for instance both and "The Gambler" and "Lady" are 1977 Masters.

14. The 1975 Masters and the 1977 Masters are collectively referred to as the "Masters".

15. In conjunction with the 1977 Agreement, Kenny Rogers signed an Agreement stating that "he is bound by and will perform the [1977] Agreement as if a party thereto in the place and stead of Producer."

16. Capitol Records only entered the 1977 Agreement in order to continue to exploit the recordings of Kenny Rogers. The 1977 Agreement was specifically designed to give Capitol Records the 1977 Masters embodying the performance of Kenny Rogers. Capitol Records and Kenny Rogers Productions intended Kenny Rogers to receive the financial benefit of the exploitation of the 1977 Masters and the 1977 Agreement. For many years, Capitol Records has been paying royalties, under the 1977 Agreement, directly to Kenny Rogers instead of paying those royalties to Kenny Rogers Productions

17. Capitol Records, Kenny Rogers Productions, and Kenny Rogers all assented and agreed to the substitution of Kenny Rogers as the payee under the 1977 Agreement. Capitol Records, Kenny Rogers Productions, and Kenny Rogers intended this assent to extinguish Capitol Records obligation to pay royalties to Kenny Rogers Productions substituting instead, an obligation on Capitol Records to pay royalties directly to Kenny Rogers. Since the substitution of Capitol Records' obligation to pay royalties to Kenny Rogers Productions for the obligation of Capitol Records to pay royalties to Kenny Rogers, Capitol Records has solely made royalty payments to Kenny Rogers. Capitol Records has made and accounted for those payments to Kenny Rogers under Kenny Rogers' social security number. Kenny Rogers is, therefore, the legal and beneficial owner of royalties under the 1977 Agreement.

18. In consideration for performance under the 1977 Agreement, Capitol Records gave Kenny Rogers the explicit right to inspect Capitol Records' books and records through an audit procedure.

19. Despite its obligations under the Recording Agreements, Capitol Records has consistently failed to **properly and accurately** account to and pay Kenny Rogers under the royalty structures set forth in the Recording Agreements.

20. In an effort to diligently enforce his rights, Kenny Rogers sent a formal notice of a royalty examination to Capitol Records on April 17, 2007. That notice put Capitol Records on notice Kenny Rogers suspected Capitol Records was in violation of its obligations to properly and accurately pay royalties. This notice served to inform Capitol Records that Kenny Rogers objected to the royalty statements which had been supplied to him.

21. Pursuant to the audit rights in the Recording Agreements, Kenny Rogers, through an accounting firm, performed an audit of Capitol Records' books and records regarding Capitol Records' accountings and payments to Kenny Rogers during the period beginning October 1, 2004 and running through March 31, 2007 (the "Audit").

22. The Audit could not be scheduled until the week of October 15, 2007. Due to Capitol Records' purposefully complex and opaque royalty payment system and Capitol Records' failure to provide all the necessary information in order to conduct a full, fair, and accurate audit, an additional day of audit field work was required on October 6, 2008. The Audit was further slowed by Capitol Records' failure to produce requested documents necessary to conduct a full, fair, and accurate audit. For instance on December 5, 2008, the accounting firm requested, among other things, Capitol Records' cash receipts from all digital download and ringtone licensees during the [e]xamination [p]eriod." Capitol Records refused to provide those documents. Due to the nature of Capitol Records' response to Kenny Rogers' audit request, the accounting firm was unable to complete an initial audit report until March 9, 2009.

23. During the course of the Audit, Kenny Rogers was on or around March 9, 2009, for the first time, able to learn of Capitol Records' specific failures to correctly account to and pay Kenny Rogers under the terms of the Recording Agreements.

24. On or around March 9, 2009, Kenny Rogers provided a specific written notice of the preliminary findings of the Audit to Capitol Records regarding Capitol Records' failure to correctly account to and pay Kenny Rogers.

25. The preliminary findings of the Audit show Capitol Records has incorrectly calculated the number of products sold, has incorrectly categorized those products, and has incorrectly paid Kenny Rogers for products for which it has accounted, resulting in total underpayments in excess of $400,000.

26. Following the creation of the Audit report, Kenny Rogers and Capitol Records entered into settlement negotiations in order to resolve their dispute. As early as 2010, Capitol Records has been promising to resolve the dispute with Kenny Rogers. In February 2011, Capitol Records stated it was "still ironing out a few things" in regards to settling the Audit. During 2011, the two Capitol Records' employees that Kenny Rogers was in negotiations with both left Capitol Records. Those employees were replaced in the settlement negotiations by an attorney, who in January of 2012, stated he would be happy to work with Kenny Rogers to "promptly try to resolve the Rogers audit."

27. On February 9, 2009, Kenny Rogers provided specific written objections to every royalty statement issued by Capitol Records starting with the period beginning on October 1, 2004 and continuing through the present.

28. Kenny Rogers' specific written objections to the royalty statements prevent those royalty statements from becoming binding under the terms of the Recording Agreements. Capitol Records had the ability to respond to Kenny Rogers' specific written objection. However, Kenny Rogers has no obligation to wait for Capitol Records to respond before filing suit. Capitol Records has failed to respond to Kenny Rogers' written objections and Kenny

Rogers cannot wait any longer to file suit in order to be made whole for Capitol Records' violations of the Recording Agreements.

29. Kenny Rogers reasonably relied on Capitol Records' promises it would settle the Audit. However, Capitol Records never agreed to a full and fair settlement of Kenny Rogers' claims. Capitol Records' failure necessitated the instant suit.

30. The Audit has so far revealed unprocessed royalties in a "Suspense" file which, had they been properly process and paid, would have resulted in payments of at least $76,956. Capitol Records' failure to properly process these royalties has directly caused a substantial underpayment to Kenny Rogers.

31. The Audit also revealed that Capitol Records has distributed "free goods" containing the Masters in foreign territories without accounting for or paying royalties for those free goods. The Recording Agreements specifically state that free goods distributed in foreign territories shall not be reduced from calculations of the total number of foreign sales used to determine the royalties due Kenny Rogers. Capitol Records has failed to provide documentation regarding the exact number of free goods upon which Kenny Rogers is due royalties. However, Capitol Records has provided information which indicates it has underpaid Kenny Rogers by at least $17,754.52, by not properly paying royalties for free goods distributed in foreign territories.

32. The Audit revealed that in certain instances Capitol Records collected income for uses of the Masters by record clubs and did not report that income to Kenny Rogers or pay royalties on that income. This failure to properly account to and pay Kenny Rogers has resulted in Kenny Rogers being underpaid by a minimum of $2,518.77.

33. Further, the Audit showed that Capitol Records, which uses multiple royalty accounts to report earnings to Kenny Rogers, had provided documentation that was inconsistent,

in that some accounts showed earnings for certain albums in certain periods, but other accounts which should have also showed royalties for those same earnings failed to reflect those earnings. These lapses and inconsistencies have resulted in underpayment to Kenny Rogers in excess of $435.94.

34. The Audit also revealed that Capitol Records withheld foreign taxes from Kenny Rogers' earnings even though these foreign taxes were offset by Capitol Records' foreign tax credits. A portion of these foreign tax credits are apportionable to Kenny Rogers. By withholding foreign taxes and by not crediting Kenny Rogers with the portion of foreign taxes apportionable to Kenny Rogers, Capitol Records has underpaid Kenny Rogers in an amount in excess of $3,757.20.

35. The Audit showed Capitol Records has incorrectly calculated the royalty rate for certain foreign territories resulting in underpayment to Kenny Rogers in an amount in excess of $381.50.

36. The Audit showed Capitol Records has deducted certain inappropriate costs from the royalties due Kenny Rogers. Capitol Records has failed to provide any support or documentation for more than $12,659.62 in charges to Kenny Rogers. Capitol Records has also charged $10,880.18 to Kenny Rogers for video costs. This amount reflects 100% of certain video cost. However, the Recording Agreements only allow Capitol Records to charge Kenny Rogers 50% of any video cost. Additionally, Capitol Records has made other unwarranted cost charges to Kenny Rogers royalty accounts resulting in underpayments in excess of $38,814.11.

37. Capitol Records has also failed to provide Kenny Rogers any accounting regarding foreign broadcast income derived from the Masters. Kenny Rogers is entitled to payment based on the income derived from foreign broadcast of the Masters. Capitol Records

9

has not accounted to or paid Kenny Rogers this income. Such failure has resulted in a substantial financial detriment to Kenny Rogers in an amount that cannot be determined until Capitol Records provides Kenny Rogers with a full, fair and accurate accounting.

38. Further, Capitol Records has received monetary awards from numerous lawsuits regarding the piracy of master recordings including the Masters. Such lawsuits have resulted in Capitol Records receiving monies from entities such as Napster, Kazaa, Audiogalaxy, Grokster, BearShare, and others. Capitol Records has refused to provide Kenny Rogers with an accounting regarding the amounts actually received. A portion of the monies received by Capitol Records is attributable to the Masters and Kenny Rogers is entitled to that portion of Capitol Records' receipts. Capitol Records' refusal to account to and pay that money to Kenny Rogers has resulted in Kenny Rogers suffering direct financial harm in an amount that cannot be determined until Capitol Records provides a full, fair, and accurate accounting.

39. In addition to these failures to correctly account and pay Kenny Rogers, the Audit revealed that Capitol Records failed to properly account to and pay Kenny Rogers for 1977 Masters distributed and sold as non-disc records. The Audit was amended on February 9, 2012 to specifically identify this breach of the 1977 Agreement.

40. Capitol Records received substantial income for the 1977 Masters licensed to third-party Music Download and Mastertone Providers, such as iTunes (Apple), eMusic, amazon.com, Verizon Wireless, and others. Music Download and Mastertone Providers are third-parties that licensed the Masters from Capitol Records and then distributed downloads and mastertones to end users on computers, cell phones, and other devices.

41. The 1977 Agreement states, "With respect to sales throughout the world of pre-recorded magnetic tapes and **all other non-disc records**, the royalty shall be one-half of Company's net royalties from each source."

42. Under the 1977 Agreement, "'record' means any device, in any speed, on any material, now known or hereafter devised . . . utilized for the reproduction of sound, or, at the option of Company, a combination of sound and a visual rendition."

43. Under the terms of the 1977 Agreement, music downloads, mastertones, and ringtones are "non-disc records."

44. After March 31, 1977, Capitol Records distributed and sold non-disc records. Capitol Records also licensed the Masters to third-party Music Download and Mastertone Providers, so that those Music Download and Mastertone Providers could distribute music downloads, mastertones, and ringtones to the public. Capitol Records received royalties from non-disc records and for this licensing and continuously and persistently failed to account to and pay Kenny Rogers the one-half of net royalties due to Kenny Rogers pursuant to the terms of the 1977 Agreement.

45. Instead, Capitol Records systematically accounted to and paid Kenny Rogers for non-disc records at lower royalty rates, under provisions of the 1977 Agreement, which are inapplicable to non-disc records. Capitol Records had a strong, but unlawful financial incentive to incorrectly pay Kenny Rogers for non-disc records because of the rising income from Masters licensed to Music Download and Mastertone Providers beginning in the early part of the last decade and continuing into the foreseeable future.

46. Capitol Records knew, recklessly disregarded, or should have known its obligations in properly paying and accounting to Kenny Rogers. Capitol Records actions, in

11

refusing to properly account to and pay Kenny Rogers, is unlawful, unfair, and/or deceptive and constitute a violation of California's Unfair Competition Law.

47. Indeed, upon information and belief, Capitol Records systematically eschewed its obligations to Kenny Rogers, similarly situated artists, and others after Capitol Records: vetted applying policies and practices at issue in this matter at its highest corporate levels, analyzed internally the financial consequences of its misconduct in terms of additional profit to be made by Capitol Records by avoiding its contractual obligations, and formulated an opaque and artificial method for accounting for and paying its royalty participants for income derived from non-disc records. Further, upon information and belief, Capitol Records has employed and continues to employ a host of unfair tactics and strategies in its dealings with Kenny Rogers and other royalty participants to minimize Capitol Records' exposure from the unlawful conduct as issue here. Finally, upon information and belief, the actions of Capitol Reocrds was part of an ongoing and deliberate attempt by record labels to deprive artists, like Kenny Rogers, in California, and elsewhere of their rightful royalties for music downloads, ringtones, and mastertones. The actions of Capitol Records affected many in the general public as a result.

48. Upon information and belief, Capitol Records has continued to incorrectly account to and pay Kenny Rogers in the period after the Audit. Such continuing failure to account to and pay Kenny Rogers has resulted in additional substantial financial damage to Kenny Rogers.

49. Capitol Records' failure to timely pay Kenny Rogers, as required by the Recording Agreements, has caused Kenny Rogers to be deprived of the use of substantial funds causing additional financial harm.

# COUNT I

## BREACH OF CONTRACT

50. Kenny Rogers realleges each and every allegation in paragraphs 1 through 49 as if fully set forth herein.

51. Kenny Rogers and Capitol Records have valid and enforceable contracts, the Recording Agreements. As the legal and beneficial owner of rights under the Recording Agreements, Kenny Rogers has the right to bring this action.

52. Kenny Rogers has performed all his obligations under the Recording Agreements.

53. Capitol Records has failed to comply with the terms of the Recording Agreements and failed to fulfill its obligations under the Recording Agreements, by failing to properly account to and pay Kenny Rogers royalties for sales and distribution of the Masters. Capitol Records' failures include, but are not limited to, incorrectly calculating products sold, incorrectly paying Kenny Rogers based on products sold, failing to allow Kenny Rogers a full and fair opportunity to conduct an audit, failing to account to and pay Kenny Rogers for all uses of the Masters and by failing to account to and pay Kenny Rogers fifty percent (50%) of Capitol Records' net royalties from non-disc records made from the 1977 Masters.

54. By reason of the foregoing and other acts not presently known by Kenny Rogers, Capitol Records has knowingly and materially breached its contractual obligations to Kenny Rogers under the Recording Agreements.

55. Capitol Records' material breach of the Recording Agreements is the legal cause of substantial damage to Kenny Rogers for which Kenny Rogers seeks monetary damages in an amount to be determined at the time of trial, but which exceeds the minimum jurisdictional requirements of the Court.

## COUNT II

## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

56. Kenny Rogers realleges each and every allegation of paragraphs 1 through 55 hereof as if fully set forth herein.

57. Kenny Rogers and Capitol Records have valid and enforceable contracts, the Recording Agreements. As the legal and beneficial owner of rights under the Recording Agreements, Kenny Rogers has the right to bring this action.

58. Kenny Rogers has performed all his obligations under the Recording Agreements.

59. Capitol Records, by and through its conduct and actions described in the Complaint, and by other acts not presently known by Kenny Rogers, unfairly interfered with Kenny Rogers' right to receive the benefits of the Recording Agreements.

60. Capitol Records interference with Kenny Rogers' right to receive the benefits of the Recording Agreements is the legal cause of substantial damage to Kenny Rogers for which Kenny Rogers seeks monetary damages in an amount to be determined at the time of trial.

## COUNT III

## UNFAIR COMPETITION

61. Kenny Rogers realleges each and every allegation of paragraphs 1 through 60 hereof as if fully set forth herein.

62. California Business and Professions Code § 17200, *et seq*. prohibits any unlawful, unfair or fraudulent business acts or practices.

63. Capitol Records has violated the foregoing law by engaging in unlawful, unfair

and/or fraudulent business practices. Capitol Records systematically and knowingly breached its contractual obligations with Kenny Rogers and others. Capitol Records either knew, recklessly disregarded, or should have known that its collection income non-disc records including income from Music Download Providers was a royalty for the distribution and/or sale of non-disc records and the monies Capitol Records received for non-disc records should have been accounted for and paid on that basis.

64. Capitol Records misled Kenny Rogers, others artists, and members of the public by failing to disclose the unlawful nature of its conduct and by employing such devices as alleged above, as well as, affirmatively representing its authority to collect and account for income from Music Download Providers on a basis other than as non-disc record income. Capitol Records' actions have had a direct impact on California citizens and have deprived Kenny Rogers of his rights under a California contract.

65. The gravity of Capitol Records' misconduct outweighs any possible economic justification for such conduct – of which there is none.

66. The harm to Kenny Rogers, other artists, and the general public arising from Capitol Records' deceptive and unlawful practices outweighs the utility, if any, of those practices.

67. The conduct described herein is ongoing, continues to this date, and constitutes unfair and fraudulent business acts and practices within the meaning of the California Business & Professions Code.

68. Kenny Rogers is entitled to an Order requiring Capitol Records to cease its acts of unfair competition against both Kenny Rogers and the public at large.

69. Kenny Rogers is entitled to an Order enjoining Capitol Records from continuing

to account for monies due Kenny Rogers for non-disc records in the unlawful manner in which Capitol Records has in the past and continues to account for said monies.

70. Kenny Rogers is entitled to restitution for quantifiable sums Kenny Rogers had an ownership interest in and which Capitol Records unlawfully, unfairly or fraudulently failed to account for and pay to Kenny Rogers, together with attorneys' fees and costs associated with this action.

## COUNT IV

## ACCOUNTING

71. Kenny Rogers realleges each and every allegation in paragraphs 1 through 70 hereof as if fully set forth herein.

72. Kenny Rogers, due to the wrongful acts of Capitol Records, is entitled to a full accounting by Capitol Records of amounts relating to the royalties received under the Recording Agreements, whereby Kenny Rogers may determine the revenues and profits rightfully belonging to Kenny Rogers and wrongfully gained by Capitol Records.

## COUNT V

## DECLARATORY JUDGMENT

73. Kenny Rogers realleges each and every allegation in paragraphs 1 through 72 hereof as if fully set forth herein.

74. Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is, or could be, sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

75. Kenny Rogers seeks a declaration that pursuant to the 1977 Agreement, Capitol Records is obligated to pay Kenny Rogers fifty percent (50%) of Capitol Records' net royalties derived from non-disc records.

76. Capitol Records denies the sale, distribution or licensing of the Masters to others for the sale or distribution of non-disc records, requires it to pay Kenny Rogers fifty percent (50%) of Capitol Records' net royalties.

77. Capitol Records continues to sell or distribute non-disc records and license the Masters to Music Download Providers for the sale and distribution of non-disc records.

78. By reason of the foregoing, there is a present controversy between Kenny Rogers and Capitol Records for which a declaratory judgment should be entered.

79. Kenny Rogers has no adequate remedy at law.

## TRIAL BY JURY

80. Kenny Rogers hereby requests trial by jury on all issues wherein trial by jury is permissible.

## PRAYER FOR RELIEF

WHEREFORE, Kenny Rogers prays for judgment against Capitol Records as follows:

(1) Compensatory damages in an amount to be determined at the time of trial;

(2) An Order and Judgment declaring that the 1977 Agreement requires Capitol Records to account to and pay Kenny Rogers fifty (50%) of net royalties for the sale and distribution of non-disc records and the licensing of the Masters to Music Download Providers, for the distribution and sale of non-disc records;

(3) Restitution for Capitol Records' Unfair Competition practices in an amount to be determined at trial;

17

(4) An order requiring Capitol Records to submit to an accounting so that all gains, sales, profits, and advantages derived by Capitol Records from each of its acts may be determined;

(5) An award of actual and reasonable attorneys' fees and costs for services rendered to Kenny Rogers in this action;

(6) An award of pre- and post-judgment interest;

(7) Kenny Rogers be awarded trial by jury on all issues triable by jury; and

(8) Such other and further relief as the Court deems just and proper.

DATED: February 13, 2012

                                                Respectfully submitted,

                                                KING & BALLOW

                                                By: /s/Richard S. Busch
                                                Richard S. Busch (Bar No. 5613)
                                                Andrew W. Coffman (Bar No. 27160)

                                                Attorneys for Plaintiff
                                                1100 Union Street Plaza
                                                315 Union Street
                                                Suite 1100
                                                Nashville, Tennessee 37201
                                                Tel: (615) 259-3456
                                                Fax: (615) 726-5417